This matter is Regscan v. Dean Mark Breweretal, Kevin Spence, and others. Sight vision. Good boy. Good boy. Scary thought. It's just a train hammer, is that correct? That's correct. Okay, whenever you're ready. Morning, Your Honor. If you may please the court, my name is Dan Schreinghammer. I'm appearing today on behalf of the appellant, Regscan Inc., which is the plaintiff in the case below. I'd like to, with leave of court, reserve five minutes for rebuttal. If you don't mind my sayings, I'm making a point where I'm wrong, but in reading the briefs, you may be too young to remember, but I remember back in the old days of black and white in New York City, they used to have Friday night creature features, and this case reminds me of the thing that wouldn't die. It keeps coming back, it keeps coming back. You shoot it, it comes back. You drive stakes through it, it comes back. This thing won't go away. It won't die, Your Honor. Sanctions are imposed, this thing comes right back. It won't die, Your Honor. I think there's a lot of animosity between the two companies. Well, what can we do to help one side of the other turn this thing around? Well, I think Mr. Gosselin would like that. But what I would like is a little bit different, Your Honor. Basically, what I'm here to do is to convince the court that the district court was wrong when it granted summary judgment on behalf of the individual defendants on the basis of race and judicata. There's a whole bunch of issues that have been decided by the district court. Well, it's really the motion for reconsideration where the court said, I can tell that what was decided here was substantive. Now, why should we not consider when the state court enters an order and writes an opinion granting sanctions based upon your having filed a motion to amend and talking about that motion and saying there is no basis in law for this, why should we not then agree with the district court that clearly the motion to amend was viewed by the district court as baseless and therefore a determination on the merits? Well, I think the biggest problem in that argument... If you would pull the mic towards you so we hear you and so it's being recorded. Thank you. I feel like it's going to hit me in the face. I'm sorry. Well, if it does, we'll give you a strip. Sometimes it's going to pop out. I don't know if you'll like that. The problem I've had with this all along, and I've been struggling with that exact issue, Your Honor, the motion that was before Judge Anderson was a motion to amend. And Judge Anderson said, you know what? I don't want to hear it. I don't want to hear it. This is a new cause of action. I don't want to have anything to do with this. Not only do I not want to hear it, I don't even want you to bring it up. He said he can't do it. Yeah, he said he can't do it. And according to ITT, we can look to the transcript and the things he said on the record to explain is a very short motion. And if we look at that, it's pretty clear that he was saying you can't, as a matter of law, bring these claims. See, and I guess I'm reading it a little bit different. Well, he also said take it somewhere else. That's correct, Your Honor. And I think what he said here, and again, the language is cited on page 12, and it's attached to the appendix. He specifically said I'm going to hear the claim on the merits of this case. That was the case that was before him at the time. It was two counts. It was a breach of a covenant not to compete in a tortious interference case. That's all he wanted to hear. And then Judge Anderson said if it was an amendment that was incidental to the particular matter at hand, I might take it up. But I'm not going to. And then he says, but you're talking about a whole separate cause of action, and you have to do what you have to do, but not as part and parcel of this case. And the way I read that is you're done. I don't want to hear it. I don't want to have anything to do with it. Well, do it even more, because he begins talking about how you cannot. This is where you seem to get pretty upset, Mr. Riddle, saying you can't suggest that answers in preliminary objections and using the mail in the course of litigation and pleadings, those kinds of things cannot be elevated to a predicate act for purposes of a revo. Well, and again, I think the biggest problem with that is it's almost like dicta. Once Judge Anderson said, I'm not going to allow you to amend this case, the RICO count was gone. It was gone. It was no longer before the court, and Reg Scan never had an ability to address the merits of its case. Judge Anderson specifically said, go to federal court. But why would he have granted a motion for sanctions where the basis for that was the filing of the motion to amend, if all he was doing in ruling on the motion to amend was saying just reserve this for another day as compared to this is frivolous. There's no basis in the law. How could he have granted this sanction motion? Did you appeal the sanction motion? No. Well, yes, we did, Your Honor. I apologize. We did. I'm confused. Yeah, we did appeal the sanction law. Clearly, the sanction motion is based upon the filing of the motion to amend. That is correct, Your Honor. And I think if you read what Judge Anderson said in his opinion, he said, look, this is part and parcel of, and I disagree with this, but it's part and parcel of an abuse of the litigative process here. You filed a motion to amend. You filed motions for sanctions. I don't want to hear it. And it was only at that point, after the RICO case was gone, it had been out of court for 18 months at that point, did he come back and say, oh, yeah, by the way, that motion to amend, I'm not real crazy about that either. It was something that he said, again, in the nature of dicta, after the fact. Now, is our standard in reviewing what Judge Bailson found, is our standard de novo? Your standard is de novo, Your Honor. We can decide for ourselves and can easily disagree. Yes, it is, Your Honor, because it was on the ground of a motion for summary judgment. What if we do disagree? What if we say, you know, he really was saying go to federal court, not here. It wasn't really res judicata. Then you're home free. Well, then I think counts one, two, and three go back to the district court for further proceedings, which would include discovery, and I would assume another motion for summary judgment. When you say discovery, that puts another fly into the ointment. Given the absence of a 56-F affidavit here, if it was to go back, why would you be entitled to any more discovery? Well, I think we would be entitled to discovery, Your Honor, on the merits of the RICO counts themselves, and we didn't get any discovery on the merits of the RICO counts, and if you read through in the complaint, it lays out a whole bunch of predicate acts, and that's what we did. Well, discovery, you depose the, I guess, the four individuals involved in the citation. You depose them in connection with the state court action, didn't you? You're saying that, I guess, there would be different questions to establish RICO predicates, different questions that you would ask and you would establish. Then you would ask to breach a contract. That's correct, Your Honor. But aren't the predicate acts the same wrongdoing as you allege in the state court? No, Your Honor. If you take out the RICO count and just assume that that was not in front of the district court and this court says, all right, we're going to remand that and what's going to happen, the counts, the predicate acts that were alleged in the complaint, are completely different than a breach of contract and a tortious interference claim that was before Judge Anderson and the Lycoming County Court of Common Pleas. The predicate acts raised arose from issues such as use of the mails to file a plea. Well, that's one. Not to file a plea, Your Honor, but to send a verification through the mails that is then subsequently filed. But you haven't contended that the only prong that you have alleged or that you've pursued on appeal is capacity of the parties. You haven't really appealed on the basis that they were really different issues before the courts. That's correct, Your Honor. Nor have you appealed based upon different parties. Well, we've appealed on the basis of the capacity of the parties. Capacity, but not the fact that they were different parties. No, and again, this is one of those areas where I took a look at all the issues there. We definitely had more issues than this with Judge Belson's decisions on the motion for summary judgment. But what I did was select what I thought were the strongest arguments, the issue of race judicata in particular. Was it a final judgment on the merits? Was their identity the capacity of partisan in the last issue? If you're right in terms of the actual identity, why wouldn't you still have a privity problem? I mean, the corporation is only going to act through the individuals. The individuals have got to be acting, it would seem, to get the predicate for RICO. They've got to be acting in their official corporate capacity, not in their individual capacity, or you can't get a corporate action. So why don't you run into privity even if you don't have a technical identity of the parties? Well, and I think that falls squarely within the Supreme Court's decision in Cedric Kushner, which I did address in my brief. And basically what the Supreme Court said there was, look, a corporation can only act through its officers. And if we were going to immunize individuals only because they were in a high position within a corporation and were using that corporation to further their RICO prohibitive goals, then that would basically immunize any officer. It's not immunize, it's just whether or not it's the same party. It's saying that the individuals here are the same as the corporation. I'm not suggesting that the individuals have a separate existence and therefore they can be immunized for purposes of RICO. What I'm suggesting is that it seems like there may be a problem if in one act you go against the corporation as the corporation and in the other want to allege certain predicate offenses, and in another action you go against the individuals who act as the corporation and say that in those actions they did certain things which constitute RICO predicates. It seems like the same problem because the corporation cannot act but for that second thing that I just posed to you. So why don't you run into a privity problem? Well, and I agree with that, and I see that I'm out of time, Your Honor. No, you're not. Wait until you're red lighted. Two, one, now you are. Okay. I didn't push the button. I'll address that issue on rebuttal, Your Honor. Okay. You saved quite a bit of time, I guess, for rebuttal. I'm sorry. You saved quite a bit of time. Yes. Thank you. Good morning, Your Honors. My name is Jason Gosselin, and I represent Citation Publishing and the individual defendants in this matter. I'm going to try to be brief this morning. I think the issues here are pretty narrow, and I think they're also pretty clear cut. It seems that the crooks of Reg Scan's argument on appeal is that the judge in the trial court essentially invited Reg Scan to file their lawsuit elsewhere. You can't have directed them to do it. Your Honor, I think that if you look at that transcript in context, and I know you have, I think they're taking that statement out of context. It's sort of like when, if you'll forgive me, my preteen tells me she's going to move out, and I tell her, you can do whatever you want, move wherever you want, you still have to take your hat off at the dinner table. That was the context of what the judge said in the state court case. I cited some of the statements of the trial court in my brief. Going back over the weekend, looking at the record, there are some other statements that make it very clear that the judge actually, I think in one sense, Reg Scan is correct. There was a procedural quality to the ruling, but procedural quality and substantive quality are not necessarily mutually exclusive. I think the judge was deciding both procedurally and substantively. The court said, and he's talking to Mr. Ertle, the attorney for Reg Scan at the time, you can't do this. You can't do this, Mr. Ertle. You can't take a case like this that has really its foundation as contract and now nuke it with this kind of thing, with RICO charges and that kind of thing, just because of the fact you don't like the way they've handled the case. It's wrong. It's just plain wrong. That was the trial court, and I submit that that was not simply a ruling on procedure in that case. So you're saying we could find its procedure and substantive, but as long as we find it substantive, then they're out of court? Correct. Correct. And I think in fairness, the judge did not want to dramatically open up the case, particularly for one that was legally meritless. So the court found it was both. It was certainly substantive, and I think that you can credit Mr. Schreinghammer's argument that it was also procedural, without finding that that decision was not based on the merits of the trial court. I also want to point out one other thing. We spent a lot of time talking about the motion to amend the complaint to add RICO claims, but in the appeal brief of the appellant, they've completely overlooked the main case that actually went through all of the discovery and also was dismissed on summary judgment. In the main case, RegScan sued Citation, and they alleged several things. A couple of those things are that Citation Publishing stole a program from RegScan called eValFinder, which was a password generation program that, according to RegScan in the state case, once Citation had this password generation program, it could go on to RegScan's database and actually steal RegScan's data and use that data to populate Citation's database. That was part of the state case. That also is at the heart of this RICO case. That claim was dismissed. Another part of the state case was that Citation stole a program called Goldmine. Now, Goldmine is like a contact manager program, but it's used by lots of different companies for managing sales leads. It has confidential customer information, all kinds of very proprietary information that RegScan put together. They alleged that Citation stole that database and then used that information to go out and compete unfairly against RegScan. That was alleged in the state case. There was no evidence for it. Citation moved for summary judgment, and that motion was granted. Now, how does this bear on the issue that they have raised on appeal? I'm not sure it actually bears on what they've argued on appeal, but the federal case was dismissed on race-true-to-cotta grounds, and the whole argument has been when RegScan tried to amend the state case to add RICO claims, that was a procedural ruling. It was substantive, but their argument was procedural. I'm saying that the main case, which did not have RICO as the label, it had torsus interference as the label. There were other allegations against Citation that, regardless of the label, in substance, they are exactly what RegScan is alleging is the RICO conduct in this case. So even though the court didn't call it a RICO case originally in the state courts, the allegations were substantively the same as what they are in this RICO case, and because that case was dismissed, the breach of contract, the torsus interference, all the other claims were dismissed on summary judgment. There's been no argument that that dismissal was procedural because it obviously wasn't. The focus has been on the RICO claims. I think what you're arguing is that if you've had your day in court on the underlying predicate acts, you can't bring a RICO claim. Exactly. You have case authority to support that proposition? Well, all the race-true-to-cotta cases that we cited, you don't have to have the cause of action. Race-true-to-cotta applies not just to the claims that were actually brought but the claims that could have been brought. If they allege that we stole these programs and we tortiously interfered and competed unfairly with them, that's fine. They can allege that. They could also have alleged that as a RICO claim initially, and they didn't. Race-true-to-cotta goes to claims that could have been brought as well as the ones that were actually brought. So you're saying even if we, you know, procedural substantive, it's not going to matter because if it goes back, there's going to be nothing there based upon other rulings in the case? Correct. Now, didn't the district court get it really wrong in terms of the capacity issue? Judge Balesen didn't mention Cedric, and doesn't Cedric specifically say that the distinction between employees acting within the scope of corporate authority and those acting outside of the authority is inconsistent with a basic statutory purpose of RICO? I don't think the judge got it wrong. If you look at what the alleged conduct was in both cases, that's where you can see that the judge actually got it right. In the state case, Reg Scan alleges that citation. Now, citation was the only defendant in the state case. Citation stole the eval finder. Citation stole the gold mine database. Citation lied to the court. Citation did all of the things that were done wrong, according to Reg Scan, were done by citation in the state court case, and citation could only act through its employees. When those claims are dismissed, Reg Scan cannot now bring the very same case against the individuals who were the actors and say, well, I'm now bringing these claims against these individuals in their individual capacity. Those individuals, whatever they did, they did it in their capacity as employees of citation. But doesn't Cedric say that's okay, that's the way RICO happens? Well, I think what Cedric says is that to have a 1963C claim, you have to have separateness between the enterprise and the defendant. And that is true. I don't think that really relates to the race judicata issue. I mean, to be, if you want to break it apart, one of the other problems that was never addressed with the state court RICO case is that it was procedurally defective because in the attempted RICO claim, there was no separateness between the alleged enterprise and the alleged defendant. There they're saying citation was the actor, the enterprise, and it was also the defendant in the case. Well, he never filed a complaint in state court on a RICO claim. Well, he attached a proposed complaint. He attached a proposed complaint to a motion, and that motion was denied. So you're saying that whatever was alleged in state court, be it by the actions taken, whether they're taken by citation or by the individual actors, that if you allege in state court that those actions constitute tortious interference with contract and or breach of contract, and you lose that, you can't then go into federal court and say those same actions, be they by citation or the individuals, but the same actions that did not amount to a breach of contract or tortious interference of a contract, you cannot now argue forget that contract action that they constituted a RICO because the RICO should have been brought as part of the thing you're alleging the actions constituted in state court. Yes, yes. When you say the RICO should have been brought, that's what he tried to do. No, no. What I'm saying is the motion to amend was to bring the RICO claim. Well, actually, no. The meat of that state case was the allegations that citation stole various software programs and used that to compete unfairly with Reg Scan. Whether you label those tortious interference or something else, those claims are what are barred now in the federal case. And just because he didn't call them RICO when he originally drafted his complaint doesn't mean that he can now bring those very same claims in federal court. Well, you see, I mean, what you're saying is RICO is not a different claim or a different cause of action from the underlying predicate X. And I don't know any case that says that. I mean, why should you have a RICO cause of action at all then if it's exactly the same as the underlying predicate X? Well, I'm not sure I understand the question. That's because I don't understand you. Okay, well, then I've got to do a better job, I guess. I've got to do a better job. The original state court case had certain causes of action. Reg Scan later tried to amend that for additional predicate X. The federal case rolls the first set of claims that were allowed and that were litigated with the second set of claims that were not allowed and were not litigated. He combined all of those into one giant 50-page RICO complaint in federal court. That's what happened here. So you have the crux of the case. And I really think all of this business about citation not paying their employees on time, missing a payroll here and there, I submit that isn't the crux of what they're arguing. The crux of what they're arguing is how they claim we unfairly competed with Reg Scan. Those claims were litigated in the main case. They did not come as part of the motion to amend the RICO case and the state case. But aren't you getting into an area you don't need to get into? Because they have limited their arguments on appeal to three arguments that are discreet and really don't go to the similarity of the issues. I mean, there's nothing raised on appeal. I guess I'm throwing you the – it's almost opening day. But, you know, they haven't said there's different issues. The only prong of res judicata they're attacking is capacity. I will try to – You'll rest on that. I have a problem with – and maybe this is what Judge Tashima is getting at. The concept of res judicata based upon a court's refusal to permit claims to be brought, denying the motion to amend, saying we will not allow you to amend to bring these, the idea that that is res judicata seems wrong somehow. And yet in ITT we decided that for purposes of Rooker-Feldman. But isn't there a distinction here between the idea of barring for purposes of Rooker-Feldman and barring based upon res judicata? Could you explore why that's really controlling? Or if it is, I'd obviously like your colleague to do the same. I think that the issue here is whether the state court ruling was on the merits or not on the merits. And even though ITT involved Rooker-Feldman, the court was – it was a res judicata analysis. And what the court said is if you have a one-line order where you can't tell just by looking at the order whether it was procedural or substantive, you then go to what took place on ruling on the motion, and that's how you can determine whether it was procedural or substantive. But the issue on a motion to amend is will I permit you to amend this? I mean, that's the determination that the court has to make. And the court decided no, I will not allow you to amend it. I mean, isn't that the essence of the ruling such that the reasoning behind it isn't all that relevant? Well, one of the arguments that was raised in opposing that motion to amend is that essentially it would be futile because it was a baseless claim. And that's typically one of the bases for opposing a motion to amend, that allowing the amendment would be futile because the claim itself is meritless. That's what citation wasn't for counsel at the time. That's one of the possible reasons. But the problem, as you see, there are all kinds of, Judge Rundell says, all kinds of possible reasons why a motion to amend could be denied. And that could be one reason. One reason is, well, it's too complex and we're too far along in this case. I mean, the judge has some discretion on procedural grounds to deny a motion to amend, right, trial judge? Absolutely. Well, we're going to start the case. For instance, you could say, well, we're going to start the trial tomorrow, so I'm going to let you amend today. It could be that clear. It could be further away from that clarity and still could be a matter of discretion. And because of the one-line order, although the judge said a lot of things during the course of the motion, some substantive, some procedural, we really don't know exactly why he denied the motion to amend. I think because he doesn't like legal claims. That's my guess, but we really don't know. He really does. Yeah, we really don't know. So given that context and the one-line order, you know, how can we give all this, you know, put all this substance into the order that's not there? I think if you look at it, we have a transcript, and if the question is, did the judge make a decision based on the merits of the claim or was it completely procedural? If we had a situation where it was the eve of trial and they brought up an attempt to add a RICO claim and the court said, look, we're about to start trial, we're not going to allow you to do that, I think then they might actually have a meritorious argument here that it was not substantive. We don't have that situation. We have something where discovery was ongoing. It wasn't that it was a couple years later that the case was ultimately dismissed. And while I think in fairness there was some of that sentiment in the judge's mind when he rejected the motion to amend, there was also the sentiment that this is a meritless claim. And to get back to Judge Rendell, your argument before, the reason I bring that up, that the main case that was litigated, is because if you were to find that that was procedural, and I don't think you should, it wouldn't matter anyway because the meat of the state case was this alleged theft of software and data. That is also the meat of the federal RICO case and that has already been litigated. They have already had their day in court and in the appeals courts. So if we were to say it was procedural and reverse Judge Bailson, if it were to proceed and you'd file another motion, they'd be out in any event? Yes, and there's another reason that they wouldn't be out that I won't go into, but we raised it in our brief. There's a major causation problem here in the Supreme Court. I was going to ask that in front of our panel. Okay, thank you. I'm not quite sure where the court wants me to pick up on this. When we looked at the Anza decision in the Supreme Court, how can you establish causation here? Well, I think what the court said in Anza, and this was an interesting procedural twist to this case, in defense against the RICO complaint, the individual defendants did raise the issue of causation and Judge Bailson ultimately said that given the decision in Anza versus Ideal Steel in the Second Circuit, he couldn't automatically say that a complex causation issue was a reason to get rid of it. And I don't think what the Supreme Court said in Anza was anything different. I don't think the Supreme Court in Anza broke any new ground. What they said, though, was that, look, you have a complex causation issue and you're making causation arguments that are better made by the public entity, by the state government issues regarding taxation and things like that. In this case, though, there are allegations of wrongdoing by the individual defendants that are appropriate for other entities to raise. For example, the misappropriation, the wholesale theft of databases, including not just the theft of Rakescan's database, but of other competitors, including the Bureau of National Affairs. The government has no interest in that theft. That's not something that the government has an interest in pursuing, so it doesn't raise the Anza causation issues, and I think that's how we get around it. And the other issue is, the issue was raised with Judge Bailson on the motion for reconsideration, and he said, I looked at Anza and I don't think it prevents the RICO claim from going forward, period. So I'm not quite sure that Anza is actually in front of the court at this point, but I do think it's distinguishable because of the allegations that were made against the individual defendants. There were a couple of things I did want to address, though, that Mr. Gosselin raised. The first one was the crux of the case. He keeps saying that, or the defendants keep saying that, the crux of the case is the theft of these two pieces of software. If you look through the predicate acts, however, and they're contained on page 61 of the appendix, there's a number of predicate acts that are listed there. The first one is utilizing the U.S. mails and interstate wire communications to misappropriate confidential and proprietary information of competitors, thereby enabling citation to maintain the skeleton staff. But that's the same thing, isn't it? You've got to get the mails in there. Isn't what you read the same thing that he's arguing? Well, that is one of the things, but there's a number of other predicate acts, embezzling employee benefit plans in order to fund the operations of the organization, using the U.S. mails and interstate wire communications to make withholdings from employee wages and unlawfully utilize those withholdings to fund operations, utilizing the U.S. mails and interstate wire communications to submit knowingly false affidavits, submitting knowingly false information to state regulatory entities, utilizing the U.S. mails to attempt to intimidate and influence the testimony. Those are issues that had nothing to do with the state court case, and that's the breach of the covenant not to compete in the tortious interference claim. So what is that? But you haven't raised that on appeal. Well, I understand, Your Honor, but it goes to the issue that Mr. Gosling was raising. If this does go back to Judge Bailson, it is not futile. There is something there for the district court to decide, and I think that's important for this court to realize. But, Your Honor, what you're saying is you believe you have all kinds of predicate acts. That's correct, Your Honor. But they haven't been ruled on yet. That is absolutely correct, Your Honor, and I think they weren't ruled upon based on this belief that raised judicata bars, the RICO claims against the individual defendants. And just going back to some of the language that Mr. Gosling cited from the transcript, Judge Anderson said you can't nuke this case. Well, okay, I can't nuke it. That means to me I can't add an additional cause of action. It has nothing to do with the substance of the RICO case. He repeatedly says in oral argument, I don't want to expand this case, and that is supported by the fact that when he denied the motion to amend, I'm sorry, when Judge Anderson denied the motion to amend, he did it in one-line order. The motion to amend is denied. Nothing at all in that motion or in that order talking about the substance of the proposed RICO claim. How would we as an ITT, how do we distinguish a Rooker-Feldman situation from a situation here dealing with raised judicata and an RICO claim? Why wouldn't the ITT analysis of what we said about looking to the transcript be the same here? Well, I think, Your Honor, the issue here is what did the court do on the motion to amend? I'm not asking the court to reconsider Judge Anderson's Rule 1023 motion. That was appealed to the Pennsylvania Superior Court, and the Superior Court filed in favor of the individual defendants. I'll admit that. And now it's on appeal to the Pennsylvania Supreme Court. I'm not asking the court to review that. All I'm saying is when you're looking at the issue of raised judicata, you have to look at what Judge Anderson did when he denied the motion to amend, and he denied it because he didn't want to expand the scope of the existing case before him. And for that reason, I believe it was improper for Judge Bailson to grant the individual defendants' motion for summary judgment on the basis of raised judicata. Thank you very much. Thank you, Your Honor. The case is very well argued. We'll take the matter into advisement. Thank you, Your Honor.